[Civ. No. 17974. Second Dist., Div. Three. Nov. 29, 1951.]

K. & M. INC. (a Corporation), Plaintiff and Respondent, v. GEORGE LeCUYER et al., Appellants; PAUL E. TAPLEY, Cross-Defendant and Respondent.

Charles A. Thomasset and Lee D. Mathews for Appellants.

Arthur V. Kaufman and George Appell for Respondents.

BARTLETT, J. pro tem.—Plaintiff alleged in its complaint filed March 14, 1949, that on or about May 24, 1948, the parties entered into a written agreement whereby plaintiff sold defendants a cocktail room and restaurant for $19,000, $9,750 of which was paid in an escrow between the parties and the balance was to be paid by defendants in installments of $700 per month, commencing August 1, 1948. Plaintiff further alleged that defendants had failed and refused to pay the installments due January 1, February 1 and March 1, 1949, and prayed judgment for the sum of $2,100.

Defendants denied all of the allegations of the complaint, except an allegation contained therein, that defendants had paid plaintiff the sum of $9,750, plus installments of $700 per month up to and including December of 1948. As an affirmative defense defendants, after setting forth their conception of the legal effect of the contract of sale, alleged that they tendered plaintiff, on March 10, 1949, the entire balance remaining due under the contract upon certain conditions set forth therein. They further alleged that plaintiff made no objection to the tender and refused to transfer to them those things to which they deemed themselves entitled. As a second affirmative defense defendants, after incorporating as a part thereof the allegations as to the tender set forth in their first affirmative defense, alleged that on March 19, 1949, they had rescinded the contract and offered to return to plaintiff everything of value received by them on condition that plaintiff likewise return to them everything of value received by it. Defendants also filed a cross-complaint for a rescission and a supplemental answer. The cross-complaint in substance alleged that at and prior to the execution of the contract, plaintiff represented that the restaurant and cocktail business was hypothecated for the faithful performance of the lease covering the premises in the sum of $2,500 and that upon receipt of payment in full plaintiff would transfer concurrently with said payment, all property, free and clear of encumbrances and liens; that defendants believed and relied upon said representations; that said representations were false in that said

restaurant and cocktail business was hypothecated to secure the lease which provided for rentals in the total sum of $36,000 plus a percentage of the gross sales; that payment in full had been tendered by defendants to plaintiff on March 10, 1949, upon condition that plaintiff perform its part of the agreement, but that plaintiff had failed so to do; that had defendants known of the falsity of the representations they would not have executed the agreement nor paid the sum of $13,250 above mentioned; that upon discovery of the fraud, defendants had rescinded; and that by reason of the premises, defendants had been damaged in the sum of $10,000 and prayed for the return of its payment and for the said damages.

The supplemental answer set forth, in substance, that on September 30, 1949, defendants tendered to plaintiff the full amount due under the agreement upon condition that plaintiff perform its obligations thereunder and that plaintiff failed and refused so to do.

The court found that the allegations of the complaint were true and that the allegations of fraud contained in the cross-complaint were untrue and rendered judgment in favor of plaintiff and against the defendants for the sum of $2,100.

Defendants contend that the judgment should be reversed for the reasons "that the judgment is not supported by the evidence and is contrary thereto," that certain specific findings made in regard to the allegations of the cross-complaint are not supported by the evidence, that the court failed to find on certain affirmative allegations of the answer and the cross-complaint and that the court erred in sustaining objections made by plaintiff to certain questions asked by defendants.

Defendants nowhere contend that the findings did not support the judgment and we take it, therefore, it is their contention that the evidence was insufficient to justify the findings as a whole. ■ In reviewing findings it is our duty to accept as true all the evidence which would support the findings, excluding all evidence in conflict therewith, and take every inference from the evidence which is favorable to the plaintiff. (*Estate of Bristol*, 23 Cal.2d 221, 223 [143 P. 2d 689].) With those principles in mind, we will briefly summarize the evidence which was before the court. Prior to the dealings with defendants, the plaintiff had entered into a lease with Louise I. Roessler for the premises in question for

a period of five years commencing on the 16th day of October, 1947, and ending on the 15th day of October, 1952. Paragraph 3 of this lease provided, in part, as follows: "Lessee covenants and agrees to pay to Lessor as and for rent for said premises during the full term of this Lease, and in addition to all other payments and considerations herein provided for, each and all of the following respective sums of money at the time hereinafter specified:

"(a) A minimum rental of the sum of $36,000.00 payable as follows:

"$600.00 upon the making and execution of this agreement, receipt whereof is hereby acknowledged; and a like sum of $600.00 on the 16th day of each and every month thereafter until the full sum of $36,000.00 shall be paid.

"(b) In addition to the foregoing payments of minimum monthly rental, Lessee shall pay to Lessor as rent the following additional sums:

"Of any all gross sales of and income from, the business of Lessee in the demised premises, such sums as 7% (seven percent) of such gross sales and income exceeds in any month the sum of $600.00."

Another paragraph of the lease which is of importance in the case was paragraph 15 reading as follows: "Lessee has delivered to Lessor, as security for the faithful performance of Lessee hereunder, the sum of $2,500.00, receipt whereof is hereby acknowledged. It is agreed that at any time during the life of this Lease, said deposit of $2,500.00 may be withdrawn by Lessee upon substitution therefor, as such security, a good and sufficient chattel mortgage of the furniture, furnishings, fixtures and equipment, of the reasonable value of $5,000.00, contained within the demised premises."

Under the terms of this paragraph of the lease the plaintiff, after depositing the sum of $2,500 in cash, withdrew this sum and executed the chattel mortgage referred to therein. This fact was disclosed to the defendants. The chattel mortgage was recorded in the Office of the County Recorder of Los Angeles County on December 16, 1947.

The contract between the parties in this case was dated May 24, 1948. It provided that for the consideration therein stated plaintiff would assign the lease to which we have just referred, to defendants and would also transfer to them the liquor license on the premises, the stock in trade, goodwill and fixtures "free of all encumbrances and liens of every kind

and description except those mentioned herein.'' By the terms of the agreement Paul E. Tapley was chosen by the parties to act as an escrow agent.

█ The evidence showed that the defendants were in default in the installments which, under the terms of the contract of sale, were due January 1, February 1, and March 1 of 1949. It further showed that at the time of the meeting in the office of the escrow agent of the parties, the lease between plaintiff and the owner of the premises was examined by the defendants and clause 15 thereof containing the provisions regarding a chattel mortgage on the fixtures to secure rents was discussed and acquiesced in by defendants. The evidence further shows that defendants accepted the benefits of the contract, entered into possession of the premises on June 12, 1948, operated a cocktail room and restaurant on the premises for months thereafter and never raised any question regarding the chattel mortgage until after they were in default in their payments due to plaintiff.

Defendants strenuously contend that the court's finding that there was no fraud or deception on the part of the plaintiff is not supported by the evidence. We have heretofore set forth the allegations of the cross-complaint regarding fraud. The defendants admit that it was disclosed to them that the plaintiff had withdrawn the sum of $2,500 mentioned in paragraph 15 of the lease and had executed the chattel mortgage provided for in that paragraph. There is much discussion in the brief regarding the question as to whether or not the chattel mortgage could be released by returning the $2,500 to the lessor but that is all beside the point as that matter is all governed by the terms of the written contracts, the lease and the chattel mortgage, and the conclusions of either the plaintiff or the defendants and their lawyer who represented them in this proceeding, regarding that matter are immaterial. They had knowledge that the $2.500 referred to in paragraph 15 of the lease had been withdrawn, that the chattel mortgage provided for therein had been executed and, as it had been recorded, they had constructive notice of its terms. (Civ. Code, §§ 2963, 1213, 1215.) This documentary evidence negatives any idea that there could have been any fraud on the part of plaintiffs as these documents disclosed all of the matters as to which it is alleged representations were made. As the attempted rescission was on the ground of fraud and there was no fraud, defendants were in no position to rescind. There

can be no question as to the correctness of the court's findings as to the amount unpaid on the contract or as to the other findings of fact made by the court.

■ Defendants urge also that the court erred in failing to find on certain issues raised by the special answers and the cross-complaint. The first of these to which they refer is the allegation of tender which is set forth in their special defense. These tenders, as shown by the testimony, the tender made in court, and by defendants' briefs, were made upon the theory that inasmuch as the contract of sale provided among other things that the license, goodwill and fixtures were to be assigned to defendants free of all encumbrances and liens except those mentioned in the contract, therefore upon defendants' tendering the balance of the purchase price, the plaintiff became obligated to transfer the property free of the lien of the chattel mortgage given as security for the performance by the lessees of their obligations under the lease. This theory is not tenable. Their tender, as alleged in their answer, demanded among other things an assignment of the lease "free and clear of all encumbrances and liens of every kind and description." This demand was made in spite of the fact that the defendants knew that paragraph 15 of this lease which they demanded be assigned to them, provided for the execution of a chattel mortgage under certain circumstances to secure the payment of rents and that the chattel mortgage had in fact been executed. True, they were entitled to an assignment of the lease, but they were not entitled to an assignment coupled with a condition that they should not assume the burdens of the lease on the property which they had long occupied. Being in actual occupancy of the premises, if the lease were assigned to defendants in accordance with their own demand made in the alleged tender, they would stand in the shoes of their assignor, the plaintiff, subject to all the terms of that lease. (*Childs Real Estate Co.* v. *Shelburne Realty Co.*, 23 Cal.2d 263, 267 [143 P.2d 697].) Defendants make this statement: "Nor is the problem solved by concluding that 'while defendants are in possession' (assuming an assignment of the lease) they take it burdened with the chattel mortgage. Nowhere have they agreed to assume the lease." They contracted that the lease be assigned and while in possession demanded that it be assigned. ■ The law governing the assignees of a lessee who are in possession of the premises is stated in 15 California Jurisprudence 751 as follows: "Assignees of a lessee who are in possession stand in his shoes and so long as

they occupy that relation to the lessor and his property are bound by the terms of the lease and the obligations implied therefrom by law. An assignee is presumed to take the leasehold estate in the condition which characterized it at the time of the assignment.'' All of this shows that the phrase in the contract of sale to the effect that the transfer should be made free of all liens except those referred to in it is not susceptible to the interpretation placed on it by defendants. No liens are mentioned in the contract except that the sentence preceding the one just referred to did provide for the assignment of the lease and therefore the acceptance by defendants of all the burdens that went with it. A literal compliance with the terms of the tender would require the plaintiff to pay the rental of the entire term of the lease to the lessor to satisfy the chattel mortgage provided for in the lease which would have secured defendants' obligation to pay rent as it became due to the lessor. It is no answer to this to suggest, as do the defendants, that perhaps plaintiff could have made other arrangements ''or, they could have taken over the lessor's interest, say, through a trustee.'' The way that chattel mortgage may be satisfied is in accordance with the provisions of that document. In the event the defendants, the occupants of the premises, pay the rent as it becomes due under the terms of the lease of which they demand an assignment, the chattel mortgage will be automatically discharged. It is evident, therefore, that defendants' tender was not made in good faith. ▆ Civil Code, section 1493 provides that tenders must be made in good faith and in such manner as to most likely under the circumstances benefit the creditor. Clearly the tender contained conditions which plaintiff was not bound to perform and was therefore ineffective. (*Kruger* v. *Vernon*, 73 Cal.App. 476, 483 [238 P. 1062] ; Civ. Code, § 1494.) ▆ Any finding which the court might have made on the issues of tender would, necessarily, have been adverse to the defendants. Under such circumstances they cannot complain of the failure to make such a finding. (*Chamberlain* v. *Abeles,* 88 Cal.App.2d 291, 300 [198 P.2d 927].)

▆ Defendants also complain of the court's failure to find on the allegations of the cross-complaint that the representations alleged to have been fraudulently made by plaintiff were untrue and also to find on the amount of damage suffered by the defendants by reason of these representations. The court having found that the representations in question were not made, these other issues become immaterial, and there was

no prejudicial error in failing to find on them. (*Petersen* v. *Murphy*, 59 Cal.App.2d 528, 533 [139 P.2d 49].) ■ As was held in *Chamberlain* v. *Abeles, supra,* 88 Cal.App.2d 291 on pages 299 and 300, the findings of a court are to receive such a construction as will uphold rather than defeat its judgment thereon, and are to be read and considered together and liberally construed in support of the judgment.

■ Defendants cite no authorities in behalf of their contentions that the court erred in sustaining certain objections made to questions asked the defendant Gould and the witness Catts. As the questions asked Gould clearly called for conclusions, and as the questions asked Catts, the agent of the lessor, as to whether or not the chattel mortgage could be released by depositing $2,500 with the lessor certainly asked for his conclusion, the sustaining of the objections to these questions was proper.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.