**Randy KRANTZ, Plaintiff and Appellant,**

v.

**Kathy HOLT, Defendant and Appellee.**

No. 900181.

Supreme Court of Utah.

Oct. 24, 1991.

Ronald C. Barker and Mitchell R. Barker, Salt Lake City, for plaintiff and appellant.

Wendell E. Bennett, Salt Lake City, for defendant and appellee.

DURHAM, Justice:

On August 1, 1986, Randy Krantz and Kathleen L. Holt entered into an earnest money sales agreement (the agreement) in which Krantz agreed to buy and Holt agreed to sell certain real property located in Davis County, Utah. Under the terms of the agreement, the selling price for the property was $27,000, of which $500 was to be paid as an earnest money deposit, with the remaining $26,500 balance due at closing. At the time of signing the agreement, Krantz gave Holt a personal check in the amount of $500. Holt did not transfer the property as provided in the agreement.

On September 2, 1986, Krantz filed an action requesting specific performance of the agreement, damages as a result of Holt's breach, and attorney fees. On October 2, 1989, Holt filed a motion for summary judgment asserting three grounds: (1) failure of consideration because Krantz's earnest money check for $500 was not honored by his bank; (2) violation of the statute of frauds because Holt's ex-husband Stephen failed to give his written approval to the transfer as required by the agreement; and (3) Krantz's breach of the agreement by not being prepared to close the transaction and failing to appear on the scheduled closing date. On October 18, 1989, Krantz filed his own motion for summary judgment, maintaining that the defenses Holt asserted in her motion for summary judgment were without merit.

On December 22, 1989, Holt's motion for summary judgment was granted and Krantz's motion was denied. Krantz objected to the order granting Holt summary judgment and requested a new trial or a correction of the order. The court denied his objections and his request. Krantz appeals the ruling on the motions for summary judgment. We reverse.

■ Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c). We accord no deference to the legal conclusions of the trial court in granting summary judgment, reviewing them instead for correctness. *Pratt v. Mitchell Hollow Irrigation Co.*, 813 P.2d 1169 (Utah 1991). In reviewing an order granting summary judgment, we view the facts and inferences in the light most favorable to the non-moving party.

Section 7 of the agreement, entitled "Special Considerations and Contingencies," states that the offer to purchase the property is made by the buyer "subject to [the] approval of Stephen Holt by August 4, 1986." The agreement provides that such condition "must be satisfied prior to closing," but does not stipulate that the approval must take any particular form. The property in question had been held in joint tenancy by Kathy Holt and her husband Stephen Holt since its acquisition. During the relevant dates of this case, the names of both appeared in the public records as joint tenants of the property. There was evidence, however, that Stephen Holt's interest in the property had been terminated by a 1982 divorce decree awarding the property to Kathy Holt.[1] Nevertheless, at the time the agreement was entered into, the divorce decree had not been recorded, nor had Stephen Holt formally deeded the property to Kathy Holt.

■ If Stephen Holt retained a joint interest in the property, his written consent to the property's sale would be necessary, not because of any clause in the agreement, but because the Utah statute of frauds so requires. Utah Code Ann. § 25–5–1; *Williams v. Singleton*, 723 P.2d 421,

---

1. The Holts were subsequently remarried.

423 (Utah 1986).[2] There would be no such requirement if, as Krantz contends, Stephen Holt retained no interest in the property pursuant to the divorce decree. In the latter case, an oral approval would be sufficient to satisfy the terms of the agreement, and the statute of frauds would not apply.[3] The issue whether Stephen Holt had a joint interest in the property during the relevant dates of this case is a question of fact. Because there are outstanding questions of fact regarding Holt's ex-husband's approval of the transfer, summary judgment cannot be sustained on this ground. *Mountain States Tel. & Tel. Co. v. Atkin, Wright & Miles*, 681 P.2d 1258, 1261 (Utah 1984).

Section 8 of the agreement provides that the date of closing for the transfer of the property was August 20, 1986. Krantz alleges, however, that prior to that time the parties reached an oral agreement to change the closing date to August 21, 1986. He testified in deposition that, in fact, Holt selected the revised date and that the date and time were reconfirmed by telephone on the morning of August 21. On that date, Krantz appeared at the title company, signed the closing documents, and left a cashier's check for the balance due as required for the closing. Holt failed to appear.

Holt argues that Krantz committed a material breach of contract by failing to close on or before August 20, 1986. Correspondingly, she argues that Krantz's untimely closing is a basis for excusing her nonperformance on August 21. The basis for Holt's argument is a "time is of the essence" clause included in the agreement. That clause, however, is not effective unless the closing date was delayed more than thirty days beyond August 20 because of uncontrollable factors such as interruption of transport, strikes, fire, flood, extreme weather, governmental regulations, acts of God, or similar occurrences beyond the control of the buyer or seller. The clause has no effect, therefore, where 30 days had not passed and the delay was the result of a mutual agreement.

■ In granting Holt's summary judgment motion, the trial court found that the argument regarding the closing date "was just an excuse [by Holt] to not close," but, combined with her other contentions, it had "some merit." In reviewing a grant of summary judgment, we must assume the truthfulness of Krantz's allegations: (1) that Holt orally agreed to delay the closing date by one day and, (2) that in fact Holt chose the new date. Under those circumstances, Holt would have waived her right to strictly enforce the closing date stated in the agreement. In that event, Holt's assertion that Krantz breached the agreement by not being ready, willing, and able to close on the originally scheduled date is predicated on a disputed issue of fact, and therefore, Holt is not entitled to summary judgment. The question whether there was an oral agreement between the parties to change the closing date requires resolution by the trier of fact.

■ Finally, in granting Holt's motion for summary judgment, the trial court concluded that as a matter of law there was a failure of consideration because Krantz's earnest money check was not honored by his bank. Holt claims that on two occasions she visited her local branch of Krantz's bank and was told that sufficient funds were not available to cover the $500 check. Holt claims that on two other occasions she telephoned the bank and was again informed that there were insufficient funds to cover the check. The check, how-

---

**2.** Krantz argues that even if section 25–5–1 of the statute of frauds mandates that Stephen Holt's approval be in writing, section 25–5–8 excuses that requirement because there was part performance of the agreement. This question will need to be addressed only if the trial court finds, as a matter of fact, that Stephen Holt retained an interest in the property.

**3.** In her deposition, Kathy Holt testified that she obtained Stephen Holt's oral approval of the transfer approximately one week after the earnest money agreement was signed. On its face, this admission appears to be a waiver of her argument that approval was not obtained. The timeliness of that alleged approval is a question of fact which will need to be considered by the trial court on remand if, as a matter of law, a written approval was not required.

ever, was never actually deposited or submitted for payment at any branch. Because of a credit arrangement he had with the branch of the bank where he maintained his account, Krantz claims that had the check been deposited, it would have cleared.

In *Sieverts v. White*, 2 Utah 2d 351, 273 P.2d 974 (1954), the purchaser of a real estate contract mailed a letter to the seller advising the seller that the buyer was "ready to present" a check for payment of an overdue balance. *Id.*, 273 P.2d at 975. On the date the letter was sent, however, the purchaser had insufficient funds in his account to meet the amount of the check mentioned. *Id.* In discussing whether the letter constituted a "tender," the lead opinion in *Sieverts* states that "a tender by check is not good unless there are sufficient funds in the account against which it is drawn, and available for full payment of the check at any time upon its presentation in due course." *Id.*, 273 P.2d at 976 (emphasis omitted).

Justice Crockett concurred in the result of the case but, joined by a majority, held that "it seems unnecessary in this case to pass on the legal sufficiency of tender." *Id.*, 273 P.2d at 977. Nonetheless, Justice Crockett went on to state in dicta:

> Though the practice may not be one to be commended, it is not uncommon, in various types of financing of business transactions, to write a check with the expectation of transferring funds or credit from one account to another, or arranging credit with the bank, or depositing money to cover commitments, if and after, a check is accepted.... Serious injustices might result if the offeree in such a transaction could defeat proof of tender simply by showing that the offeror had not sufficient funds in the bank to cover the check at the time it was offered.

*Id.* We believe that in order to establish her claim for failure of consideration, Holt must show that Krantz's earnest money check was formally dishonored by his bank.

The Utah Uniform Commercial Code (UUCC) provides: "Presentment is a demand for acceptance or payment made upon the maker, acceptor, drawee or other payor by or on behalf of the holder." Utah Code Ann. § 70A–3–504(1). The UUCC defines "holder" as a "person who is in possession of a document of title or an instrument or an investment security drawn, issued or endorsed to him or his order or to bearer or in blank." *Kohlhepp v. Mason*, 25 Utah 2d 155, 478 P.2d 339, 342 (1970) (citing Utah Code Ann. § 70A–1–201(20)). In *Kohlhepp*, a check was expressly made payable to the order of a specific individual. The individual's secretary inquired at the drawee bank as to whether the check, not yet endorsed, would be paid if it were presented for payment. The bank officer responded "no" and put a notation on the check, "Drawn against uncollected funds." *Kohlhepp*, 478 P.2d at 341. We held that the facts of *Kohlhepp* did not constitute "presentment" for payment and that the drawee bank's statement that the check had been drawn against uncollected funds was not a "dishonor" to a failure of consideration. *Id.*, 478 P.2d at 342. In reaching this conclusion, we observed:

> A check does not itself operate as an assignment of any funds in the bank, 70A–3–409(1), but suspends the underlying obligation until the instrument is presented, 70A–3–802(1)(b); see also 70A–2–511(3). The drawer's contract is that he will pay the amount of an uncertified check *upon dishonor* and notice thereof, 70A–3–413(2).... [The check] was a promise of future payment at the time of presentation.

*Kohlhepp*, 478 P.2d at 342 (emphasis added). In the present case, the check was never "presented" by Holt or "dishonored" by Krantz's bank. In the absence of those preconditions, the trial court incorrectly concluded, as a matter of law, that there was a failure of consideration. The summary judgment must therefore be reversed on that ground also.[4]

---

**4.** Krantz argues that Holt orally agreed to have him include the earnest money in the amount to be paid at closing. In light of our holding that the $500 check remained valid consideration

## CONCLUSION

The purpose of a motion for summary judgment is to expedite procedure and obviate trials where no genuine issue of fact exists. *Ulibarri v. Christenson*, 2 Utah 2d 367, 275 P.2d 170, 171 (1954). Cases decided on summary judgment cannot, by definition, resolve factual disputes. *Schurtz v. BMW of North America, Inc.*, 814 P.2d 1108 (Utah 1991). "Litigants must be able to present their cases fully to the court before judgment can be rendered against them unless it is obvious from the evidence before the court that the party opposing judgment can establish no right to recovery." *Mountain States Tel. & Tel. Co.*, 681 P.2d at 1261 (citation omitted). In this case, there are outstanding issues of fact on the questions of Stephen Holt's approval of the transfer and the changing of the closing date. Moreover, the trial court incorrectly concluded as a matter of law that Krantz's earnest money check had been "presented" to and "dishonored" by his bank. For these reasons, we vacate the summary judgment and remand for further proceedings in accordance with this opinion.

HALL, C.J., HOWE, Associate C.J., and STEWART and ZIMMERMAN, JJ., concur.

because it was never properly presented or dishonored, we need not reach this issue. Further, it is unnecessary for us to address Krantz's allegations that Holt's statements about her communications with the bank are hearsay.