**Michael Aaron DRYSDALE,
Plaintiff and Appellant,**

v.

**FORD MOTOR COMPANY, a Delaware corporation; Bridgestone/Firestone, Inc., fka The Firestone Tire & Rubber Company, an Ohio corporation; Granite School District, a governmental entity and political subdivision of the State of Utah; TNT Auction, Inc., a Utah corporation; Tire World, a Utah corporation; Marler Tire Supply Company, Inc.; and John Does II through X, Defendants and Appellees.**

No. 960418.

Supreme Court of Utah.

Oct. 17, 1997.

Thomas L. Kay, Paul D. Newman, David N. Wolf, Salt Lake City, for Ford Motor Co.

RUSSON, Justice:

## INTRODUCTION

Michael Aaron Drysdale appeals the trial court's grant of Ford Motor Company's ("Ford") motion for summary judgment. We reverse.

## BACKGROUND

On June 13, 1992, Drysdale was driving his 1980 Ford Pinto south on Interstate 15 near Beaver, Utah, when one of his tires blew out. His car slid into the median and rolled several times. Drysdale was severely injured as a result. Following the accident, Drysdale's family removed the blown tire and accompanying rim from the car and then had the car towed to a service station near Beaver. Sometime during Drysdale's hospital stay, and apparently without his knowledge or consent, the proprietors of the service station destroyed the car. It was not until approximately five months after the accident that Drysdale discovered that the car no longer existed.

Drysdale filed suit against several parties to recover damages relating to the accident. Against Ford, Drysdale made claims of strict products liability, breach of implied warranty, and negligence based on allegations that the car was defective, unreasonably dangerous, and unfit for the purpose for which it was sold. Ford moved for summary judgment, arguing that the car was the most relevant and crucial piece of evidence in this case and that without it Drysdale could not possibly prove, and Ford could not adequately defend, the case. The trial court granted the motion, and Drysdale appeals.

On appeal, Drysdale claims that the trial court incorrectly granted Ford's motion for summary judgment. He argues first that the trial court's dismissal of his case was more properly characterized as a discovery sanction for failure to preserve evidence under rule 37(b)(2)(c) of the Utah Rules of Civil Procedure. Drysdale argues that since the destruction of the car was not willful on his

Richard I. Ashton, David A. Wilde, Murray, for Drysdale.

part, the trial court's sanction was an abuse of discretion. Drysdale further argues that if the dismissal was in fact a summary judgment, it was still improperly granted, reasoning that the destruction of the car does not preclude him from making out a prima facie case of design defect, since the alleged defect would be evident in any 1980 Ford Pinto. Drysdale also asserts that the trial court's findings of fact stating that Ford was "unfairly" and "severely prejudiced" by the destruction of the car were disputed, precluding summary judgment.

In response, Ford emphasizes that in Utah proximate cause is a required element in a products liability cause of action. Ford argues, however, that without the car, Drysdale cannot prove that the alleged design defect was the proximate cause of the particular injuries he sustained in the accident. Ford further claims that it cannot properly defend Drysdale's action without the car.

## STANDARD OF REVIEW

In reviewing a grant of summary judgment, we accord no deference to the trial court's conclusions of law and review them for correctness. *Krantz v. Holt*, 819 P.2d 352, 353 (Utah 1991). Further, "we view the facts and inferences in the light most favorable to the non-moving party." *Id.* Finally, summary judgment is proper only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c).

## ANALYSIS

We must first determine whether the trial court dismissed Drysdale's claims on summary judgment or, as Drysdale argues, as a discovery sanction. The language employed by Ford in its motion and by the trial court in its order is helpful in making this determination. Ford's motion was styled a "Motion for Summary Judgment," and the trial court explicitly stated that it was granting "Ford's Motion for Summary Judgment." In its memorandum in support of its motion, Ford argued that "Drysdale's failure to preserve the vehicle effectively prevents him from establishing the elements of his claim against

Ford." After pointing out the necessity of proving that an allegedly defective product actually caused injury, Ford argues that Drysdale simply cannot show this without the car. The trial court adopted these arguments when it stated that it was granting Ford's motion "for the reasons and on the grounds set forth in the memoranda filed in support of Ford's motion." Clearly, these are proper claims and relevant arguments in a summary judgment context, and neither Ford in its motion nor the trial court in its order ever discussed discovery sanctions. Because nothing in Ford's motion or in the trial court's order leads us to think that Drysdale's claims were dismissed as a discovery sanction, we conclude that Ford's motion was in fact a rule 56 motion for summary judgment and that the trial court properly treated it as such.

We now address whether the motion was properly granted. We think it was not. "Litigants must be able to present their cases *fully* to the court before judgment can be rendered against them unless it is *obvious* from the evidence before the court that the party opposing judgment *can establish no right* to recovery." *Mountain States Tel. & Tel. Co. v. Atkin, Wright & Miles*, 681 P.2d 1258, 1261 (Utah 1984) (emphasis added); *see also Krantz v. Holt*, 819 P.2d 352, 356 (Utah 1991). Prior to the completion of discovery, however, it is often difficult to ascertain whether the nonmoving party will be able to sustain its claims. In such a case, summary judgment should generally be denied. *See Pepper v. Zions First Nat'l Bank, N.A.*, 801 P.2d 144, 154 (Utah 1990) (summary judgment premature since nonmoving party might be able, through additional discovery, to prove different theories of recovery); *Cox v. Winters*, 678 P.2d 311, 315 (Utah 1984) (summary judgment not proper before nonmoving party has carried "already-begun discovery proceedings to completion"); *Auerbach's, Inc. v. Kimball*, 572 P.2d 376, 377 (Utah 1977) (summary judgment premature because nonmoving party's discovery not yet complete).

In the case before us, Ford claims that Drysdale must "establish that the Auto-

mobile was defective and that the defect was the proximate cause of his injuries." However, Ford asserts that without the car, Drysdale "cannot establish the elements of his claim." Ford argues that the car is essential to determine such things as whether Drysdale's head actually hit the roof, whether Drysdale was wearing a seat belt, whether the springs in the seat had compressed over the years thereby increasing the headroom, or whether increased headroom would have even made a difference in this case. Drysdale, on the other hand, asserts that the car is not necessary to sustain his claims and argues that the alleged design defect "can be proven by expert testimony" relating to other 1980 Ford Pintos.

Ford's claim that Drysdale cannot make out a prima facie case without the car cannot be determined until discovery is complete in this case. Until then, that argument is merely a theory. We are not convinced that there is no possibility that Drysdale can prove his case without the car. Much evidence exists other than the car itself that may prove to be relevant in this case. Such evidence includes the vehicle specifications of all 1980 Ford Pintos, existing 1980 Ford Pintos, Drysdale's body size and measurements, Federal Motor Vehicle Safety Standards, computer modeling and crash testing, the police report, and photographs of the car and the accident scene taken by the Utah Highway Patrol. Neither Drysdale nor Ford has the benefit of examining the car, and both parties would appear to be prejudiced equally, if at all, by its absence. Yet on the basis of the available evidence only, Drysdale submitted to the trial court three affidavits of experts expressing opinions supporting Drysdale's claim that all 1980 Ford Pintos are defective in design and that such defective design contributed to Drysdale's injuries. Nevertheless, despite equal access to all of this evidence, Ford has chosen not to submit any expert testimony of its own or to use the evidence in any other way to refute any of Drysdale's claims. Rather, Ford merely asserts that Drysdale cannot support his claims and that Ford cannot defend those claims without the car. Before summary judgment is considered by the trial court, Drysdale should be afforded every reasonable opportunity to gather whatever evidence he can in support of his claims. Likewise, Ford should be given every reasonable opportunity to gather whatever evidence it can to rebut those claims or show that it cannot do so without the car. At that point, a motion for summary judgment may be appropriate, and the trial court will be better able to determine the effect of the absence of the car. Therefore, we think that the trial court granted Ford's summary judgment motion prematurely.

Because we conclude that the trial court erred in granting Ford's motion for summary judgment, we need not address Drysdale's arguments regarding the trial court's findings of fact.

## CONCLUSION

In light of the foregoing, we reverse the trial court's grant of Ford's motion for summary judgment and remand for further proceedings consistent with this opinion.

ZIMMERMAN, C.J., STEWART, Associate C.J., and HOWE and DURHAM, JJ., concur.