2007 UT 92

**MOUNTAIN WEST SURGICAL CENTER, L.L.C., and Mountain West Medical Properties, L.L.C., Plaintiffs, Appellants, and Cross–Appellees,**

v.

**HOSPITAL CORPORATION OF UTAH dba Lakeview Hospital, Defendant, Appellee, and Cross–Appellant.**

No. 20060243.

Supreme Court of Utah.

Nov. 27, 2007.

Craig D. Adamson, Craig A. Hoggan, Debra G. Giffiths Handley, Salt Lake City, for plaintiffs.

Andrew H. Stone, Marci Rechtenbach, Ryan M. Harris, Salt Lake City, for defendant.

DURRANT, Justice:

## INTRODUCTION

¶ 1 Mountain West Surgical Center and Mountainwest Medical Properties (collectively "Mountainwest") appeal the district court's decision granting summary judgment to Hospital Corporation of Utah ("HCU") on Mountainwest's claims of tortious interference with economic relations and abuse of process. The district court granted summary judgment in favor of HCU, in part because Mountainwest failed to provide evidence of causation on either claim. We affirm the district court's grant of summary judgment in favor of HCU on that basis.

## BACKGROUND

¶ 2 Because this matter was decided on summary judgment, we recite the facts and

inferences in the light most favorable to the nonmoving party.[1] In 1973, Davis County officials and Hospital Corporation of America ("HCA") entered into an agreement to develop, finance, construct, and operate a new hospital in Bountiful, Utah. As part of the agreement, Davis County agreed to cease operation of an older and smaller hospital, South Davis Community Hospital ("SDCH"), adjacent to the planned new facility. HCA created an affiliate business entity, HCU, to own and operate the new facility, which became Lakeview Hospital.

¶ 3 In 1989, to straighten borders between the adjoining properties, HCU conveyed certain property to SDCH by deeds that contained restrictive covenants prohibiting the operation of certain types of medical facilities. In 1999, SDCH began developing a joint venture with Mountainwest to use the SDCH property to establish a medical complex directly adjacent to Lakeview Hospital.

¶ 4 HCU took steps to block the construction of the new facility, including opposing the project at planning and zoning meetings and, eventually, filing a lawsuit (the "first lawsuit") against SDCH, claiming breach of contract and violation of the restrictive covenants on the property. HCU also recorded a notice of lis pendens on the SDCH property.

¶ 5 In the first lawsuit, the district court granted summary judgment against HCU on its contract claims but determined that genuine issues of material fact remained for trial with respect to the restrictive covenants. The court also held that the lis pendens was a "wrongful lien." The parties settled this remaining claim, and the new medical facility was built at a different location after some delay.

¶ 6 In 2004, Mountainwest filed the action now before us, accusing HCU of tortious interference with prospective economic relations and abuse of process. Mountainwest claimed that by filing the first lawsuit and the lis pendens, HCU caused the proposed medical facility to be built in a different location, resulting in increased costs and long delays.

¶ 7 The parties' counsel agreed to a discovery schedule and agreed to be ready for trial by March 2006. Yet Mountainwest failed to conduct any discovery or respond to discovery requests until after all deadlines had passed. In response, HCU filed a motion to compel followed by a motion for summary judgment. In its motion for summary judgment, HCU alleged that Mountainwest had failed to come forward with any evidence to support its claims. HCU also argued that the lawsuit and lis pendens were absolutely privileged under the judicial proceeding privilege.

¶ 8 Mountainwest filed an opposition to HCU's motion for summary judgment, an opposition to the motion to compel, and its own motion for partial summary judgment. In support, Mountainwest submitted an affidavit of its employee Richard Vincent. Vincent stated that the filing of the first lawsuit and the lis pendens effectively stopped the project and that, subsequently, the lender withdrew its financing. HCU filed a motion to strike the affidavit as both untimely and lacking in foundation as Vincent did not purport to have personal knowledge of the lender's motivation in withdrawing financing.

¶ 9 The district court granted summary judgment in favor of HCU on three alternative grounds. First, the court held that the lis pendens and the first lawsuit were absolutely privileged by the judicial proceeding privilege. Second, the court found that Mountainwest's evidence was insufficient to raise an issue of fact as to causation on either claim. Finally, the court cited Mountainwest's failure to comply with the discovery schedule as an additional ground for granting summary judgment. The court denied HCU's motion to strike the Vincent affidavit, however. Mountainwest appeals the grant of summary judgment against it, and HCU cross-appeals the decision not to strike the Vincent affidavit.

## STANDARD OF REVIEW

¶ 10 Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[2] The court

---

1. *Krantz v. Holt,* 819 P.2d 352, 353 (Utah 1991).

2. Utah R. Civ. P. 56.

must view all facts and inferences in the light most favorable to the nonmoving party, but it may not assume facts for which no evidence is offered.[3] We review a trial court's order granting summary judgment for correctness.[4]

## ANALYSIS

█ ¶ 11 We recognized the tort of interference with prospective economic relations in the case of *Leigh Furniture & Carpet Co. v. Isom*.[5] In that case, we explained that to establish the tort "the plaintiff must prove (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff."[6] A claim for abuse of process requires the plaintiff to show (1) that the defendant used legal process, (2) to accomplish an improper purpose or purpose for which that process was not designed, (3) causing the plaintiff's harm.[7] Both torts require the plaintiff to produce evidence that the defendant's action caused injury to the plaintiff.

█ ¶ 12 Here, Mountainwest contends that the lawsuit and the notice of lis pendens caused the lenders to withdraw funding for the project, which caused its damages.[8] Yet as the district court noted, "[Mountainwest] offer[s] no testimony from any lender or title company that the *lis pendens*, as such, caused them to refuse to proceed with the sale of the underlying land." Indeed, Mountainwest failed to conduct discovery, and the only evidence it offered on this point was the affidavit of its employee Richard Vincent. The affidavit contains only one assertion bearing on causation: "the notice of lis pendens effectively stopped the project. SDCH did not deed the property to Mountainwest

Properties and Mountainwest Properties' lender withdrew its commitment for construction financing."

¶ 13 HCU filed a motion to strike the affidavit as both untimely and without foundation. The district court declined to strike the affidavit but, nevertheless, found that the affidavit presented insufficient evidence to raise an issue of fact as to causation. Because we, too, conclude that the affidavit is insufficient even if considered, it is unnecessary for us to reach the question of whether the court properly declined to strike it.

█ ¶ 14 The affidavit provides insufficient evidence of causation for two reasons. First, Vincent's statement as to causation lacks foundation. A witness or affiant must testify from personal knowledge of the matter.[9] Vincent, a Mountainwest employee, did not purport to have personal knowledge of the decision-making process of the lender or of the effect (if any) of the lis pendens. Any testimony by Vincent as to the reason for the lender's actions, therefore, would be hearsay or conjecture.[10] Second, even if a proper foundation for Vincent's statements is assumed, his assertion is factually insufficient to establish causation. At most, it shows that the lender withdrew its commitment *after* the lis pendens was discovered. Further, Vincent's observation that SDCH did not deed the property to Mountainwest is irrelevant as to the effect of the lis pendens; as a named party in the first lawsuit, SDCH could not have learned any information from the lis pendens of which it was not already aware.

¶ 15 Accordingly, we affirm the district court's grant of summary judgment in favor of HCU as to each of Mountainwest's claims

---

3. *Peterson v. Coca–Cola USA*, 2002 UT 42, ¶ 20, 48 P.3d 941 (holding that "[a]llegations or denials in the pleadings are not a sufficient basis for opposing summary judgment") (quoting *Hall v. Fitzgerald*, 671 P.2d 224, 227–28 (1983)).

4. *Krantz v. Holt*, 819 P.2d 352, 353 (Utah 1991).

5. 657 P.2d 293, 304 (Utah 1982).

6. *Id.*

7. *See Hatch v. Davis*, 2006 UT 44, ¶ 34, 147 P.3d 383.

8. Mountainwest did not argue that the underlying lawsuit, independent of the lis pendens, separately caused its injury. Therefore, we address only Mountainwest's contention that the filing of the notice of lis pendens caused its injury.

9. Utah R. Evid. 602.

10. *See State v. Jones*, 656 P.2d 1012, 1014 (Utah 1982) (holding that personal knowledge of a matter is a prerequisite to testimony and that without personal knowledge, testimony on that matter is inadmissible hearsay).

because Mountainwest failed to raise an issue of fact as to causation.

## CONCLUSION

¶ 16 Because we conclude that Mountainwest failed to raise an issue of fact as to causation for each of the claims it asserted, it is unnecessary to reach the issues of whether the other grounds for summary judgment were appropriate. We affirm the district court's grant of summary judgment in favor of HCU.

¶ 17 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Justice DURRANT'S opinion.